## Benn v. Brown, Appellant.

Argued September 28, 1962. Before BELL, C. J., MUSMANNO, JONES, EAGEN, O'BRIEN and KEIM, JJ.

*Harold F. Reed, Jr.,* with him *Reed, Ewing, Orr & Reed,* for appellant.

*John G. Good, Jr.,* with him *Ray and Good,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 13, 1962:

Clyde F. Benn was a wintertime Samaritan. After a day's labor at the steel mills in Aliquippa he started for his home near Butler in an automobile driven by a fellow-worker. The road was covered, and the air filled, with snow. When they arrived at the crest of a steep ascent in the highway at a point between Rochester

and Zelienople they could proceed no further because of a zig-zagged accumulation of automobiles, some off the road as a result of the icy and slippery surfaces, and others hopelessly static as a result of the vehicular tangle which no one was making any effort to unravel.

Clyde F. Benn projected himself into the situation to bring order out of chaos. With the help of several other motorists he got two cars, which were off the road and partially in a ditch, back on the road and sent them on their way to Zelienople. Traffic was still tied up, however, and it now became evident that the cork in the bottleneck was a Chevrolet station wagon taxi-cab, which diagonally straddled the westbound lane of the highway, facing the crest, its right wheel deep into the berm, on the north side of the road. The owner and operator of the car, Mrs. Lucille Brown, was standing on the road, holding in her hand a tire chain which she said had become detached from the right rear wheel, the detachment having occurred while en route from Zelienople.

Benn summoned four or five motorists, whose cars were part of the vehicular melange, and outlined a plan to bring fluidity out of the glacial stagnation. If the cab could be turned around so that it would face downhill, it could then proceed to some nearby service station to have the damaged wheel chain repaired and attached to the wheel which needed it. Assigning men to different positions at the rear and sides of the stranded car, Benn himself took up a position close to the right front fender. Working in unison all of the men lifted, pushed, heaved and pulled the station wagon out of its involuntary anchorage and then turned it counter-clockwise on the highway so that it was now in the eastbound lane, facing the bottom of the hill.

When the complete U-turn had been successfully accomplished, Benn stepped back to the berm on the south side of the highway one foot from the pavement and at

a point, if a line were drawn from his position into the roadway, four or five feet ahead of the station wagon cab.

The key to the traffic lock had been turned and with some care on the part of everybody, normal movement on the highway was about to resume. Mrs. Brown, who had been occupying the driver's seat throughout the man-powered maneuver, now started forward under the car's own power. After traveling two or three feet, the car suddenly left the paved portion of the road and headed for the very spot where Clyde Benn was standing. Startled, he fell back, seeking to parry the thrust of the threatening cab, but after retreating a distance of eight or nine feet he came up against a 10-foot bank, which he could not climb because of its icy flanks. The car advanced inexorably and struck him, breaking his leg, and then somehow repeated the performance to do the job completely. Benn testified as to what happened: "Well, I was trying to get away from the cab when I was going back to the bank; but when I got to the bank I couldn't crawl up because it was so icy and slippery. When the cab hit me it kind of bounced away and come back on my leg the second time."

Benn sued Lucille Brown in trespass and the jury returned a verdict in his favor in the sum of $8,000. Mrs. Brown moved for judgment n.o.v. averring she was without negligence, and that the plaintiff was guilty of contributory negligence. The motion was refused and the defendant appealed.

The jury found, and the facts justify such a finding, that Mrs. Brown was negligent in that she did not have her car under proper control. To begin with, the impact occurred off the highway, which of itself might suggest lack of care on the part of the defendant. In the second place, the defendant was fully aware of the presence of the plaintiff. During the entire U-turn operation Benn was pushing at the right front fender,

close to the bumper of the defendant's car, so that he was within her sight practically continuously. She could not help but see, had she been attentive, to say nothing of being grateful to the plaintiff, where he went to after he had befriended her, assisted her, and was about to bid her good luck on the rest of her journey. Her headlights were burning, the snow further illuminated the scene, and the plaintiff was in dark working clothes. There was no excuse for her not to see him, especially after the Samaritan feat he had just performed.

The defendant argues that the car slid to its right, "a circumstance definitely to be anticipated under the weather and road conditions existing on the hill." This brings up another item of negligence. After the chain to the right rear wheel defected, Mrs. Brown retrieved the chain and continued on her way. She passed several service stations where the chain could have been repaired and attached. The failure to use chains is not of itself negligence, but if an accident occurs which reasonably might have been averted if the car had been equipped with chains, the jury may consider the absence of chains, combined with all the other circumstances in the case, in resolving the issue of negligence. (*Fitzpatrick v. Pralon,* 129 Pa. Superior Ct. 437, 441.)

The defendant emphasizes that the speed of the defendant's automobile, at the time of the accident, did not exceed 3 to 5 miles per hour. A vise probably moves even slower, but it nevertheless crushes whatever is within its merciless jaws. Where crushing is concerned, it is not the speed but the pressure behind the impact which accomplishes the pulverization.

The defendant, contrary to her counterpart on the road to Jericho in biblical days, says that whatever befell Clyde Benn was the result of his own fault. He knew, she says through her attorneys, "that the defendant's automobile was equipped with only one chain,"

and he also knew of the slippery conditions obtaining at the time. Therefore, the attorneys say, the plaintiff was guilty of contributory negligence because he did not take up a position in the rear of the automobile which, they say, was "a place of absolute safety." It would probably be difficult to imagine a place of greater danger for Clyde Benn. If the defendant could not see him in front of her, what chance would he have behind her car in the event she suddenly decided to go into reverse? Even in normal conditions, standing behind a motor car is as perilous as standing behind an army mule.

In this case the danger of standing behind the automobile was particularly acute because there was the possibility of a crushing between the rear of the defendant's car and one of the other automobiles which might have come forward either under its power or as a result of sliding.

The defendant argues that the plaintiff chose a position of obvious danger and that, therefore, he voluntarily assumed a risk for which she could not be held liable. But where was the plaintiff to stand? To stand behind the car was out of the question; to stand on the left side of the defendant's car would have been extremely risky because he would then have been in the middle of the highway and other cars were now beginning to move. Instead of having chosen a place of danger, as the defendant insists, the plaintiff selected perhaps the least dangerous spot in the whole mise en scene. He would have been wholly safe at that spot had he not, in the words of the trial judge, "failed to anticipate that the defendant would suddenly and without warning turn to the right and relentlessly pursue him into the bank where he was helpless to protect himself."

But this failure to anticipate ingratitude, of which there is enough in the world that the plaintiff could

not help but be aware of its likelihood in the most unlikely circumstances, the law does not regard as contributory negligence.

Judgment affirmed.

Mr. Chief Justice BELL dissents.