## Pascale, Appellant, v. Simmons, Appellant.

Argued January 12, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*William C. Archbold, Jr.,* with him *Kearns, Archbold and Maffei,* for plaintiff.

*Bernard P. Carey, Jr.,* with him *James A. McGoldrick,* and *Johnson, Fox, McGoldrick & Prescott,* for defendants.

OPINION BY MR. JUSTICE MUSMANNO, March 13, 1962:

On July 3, 1958, Vincent Pascale was sitting in his Pontiac automobile on Edgemont Avenue in Parkside, Delaware County, waiting for a truck (pick-up International) ahead of him to move forward as it in turn waited for a station wagon preceding it to enter into a parking lot off Edgemont Avenue. While this was transpiring a truck (Ford flatbed) operated by Charles Simmons for the Fizzano Brothers violently struck Pascale's car in the rear. The impact sent Pascale's car smashing into the rear of the International pick-up truck which then was pushed forward until it came within inches of the station wagon. The front bumper of the Ford truck hit the Pontiac with such momentum that it became entangled in the trunk of the Pontiac and the two vehicles, now welded into one, engaged the International truck from the rear and threw it forward thirty feet.

When the four-car parking, striking, entangling, smashing and pushing operation finally came to an end, Pascale's car was in a state of near demolition and Pascale himself had undergone serious nervous and bodily mutations. He brought suit against Simmons and his employers, the Fizzano Brothers. At the trial the defendants moved for a compulsory nonsuit which was refused. The jury later brought in a verdict for $11,355.62 in favor of the plaintiff against all the defendants. The defendants moved for judgment n.o.v. and a new trial. The court refused the motion for judgment n.o.v., but granted a new trial. The plaintiff appealed from the order of a new trial and the defendants appealed from the refusal of judgment n.o.v.

In that posture, the case is now before us.

A paradox is confronted at the outset in the fact that although the trial judge orders a new trial he states that he erred in not granting a nonsuit. If the circumstances dictated a nonsuit why then a new trial? But that is only one of the strange things in this case. The trial judge states further that he erred in charging the jury. His error, however, turns out to be the granting of a new trial on an *assumed* error because study of the charge shows it to be (to the credit of the judge) without error.

In order to unravel this tangled skein of error and alleged error it is necessary to go back to Edgemont Avenue on July 3, 1958. When the four cars involved in the mishap of that day ceased moving like the bellows of a rapidly closed accordion, the driver of the Ford truck, Charles Simmons, announced to nobody in particular but to the world in general: "I am sorry but my brakes failed me." Because of this statement, which was testified to by three persons, the judge developed the idea that the plaintiff had "produced evidence of a mechanical failure of brakes." In his opinion granting the new trial he said that he "erred in his charge

to the jury in regard to the defendants' contention that plaintiff, having produced evidence of a mechanical failure of the brakes was required to further show that the defendants knew or should have known the brakes were defective."

This assertion is honeycombed with error. In the first place, the plaintiff "never produced evidence of a mechanical failure of the brakes." He merely testified to what Simmons said. In the second place, the defendants never contended that the plaintiff had to show "that the defendant knew or should have known the brakes were defective."

In his charge to the jury, the judge said: "Now, in this testimony there is the testimony that the driver said, my brakes did not work. It has been contended by the defense that it is the obligation of the plaintiff to produce proof that the defendant's car or truck was not adequately equipped with proper brakes. I say to you that that is not the law of Pennsylvania, that the law of Pennsylvania requires the defendants to enter a defense, if that is his defense, from which either the court can find that there was no negligence but that this was an accident, or to permit the jury to pass upon the fact as to whether the testimony is to be believed on either side."

This was a correct statement of the law, but in a consistently determined effort to prove that he was on the wrong road of reasoning, although he was on the right road all the time, the trial judge insists that this instruction was error.

The order granting the new trial rests on a platform of conclusions held up by a scaffolding of suppositions which do not coincide with reality. The trial judge was evidently of the belief that merely because Simmons said his brakes had failed, this utterance prima faciedly exonerated him from liability. This is

one of the most unreliable of the assumptions which go into the rickety scaffolding.

It is an easy thing for any driver involved in an accident to say that his brakes failed, but one can derive from such a remark many interpretations which do not exonerate the driver. The brakes, for instance, may have failed because the driver did not apply them properly, or at all. The brakes may have failed because they were defective and the driver knew they were defective. They may have failed because the driver was traveling at such speed that they could not catch hold in time to stop the car within the short distance still left him before reaching the object in his path.

Then, of course, it is not impossible that Simmons was telling an untruth when he said his brakes failed. His utterance may have been a glib attempt to extricate himself from the difficult situation in which he found himself. He made another statement which must be considered in reenacting this episode of the road. He said: "I was sort of mad at the yard because they left me out after 4:30 and when I get back it will be about 7:30."

Simmons was angry with those who ordered him out to do a job at such a retarded hour that he would not return to his home until late in the evening. Whatever grudge Simmons may have been holding against his superiors at his place of employment is of course irrelevant to the legal controversy, and certainly being "mad" at the "yard" was no justification for his being "mad" at the world. And if, because of that resentment he became careless, it would not be the first time that one who is angry over a personal hurt, actual or assumed, vents his spleen on an entirely innocent person.

The jury could have interpreted from what Simmons said and did that his anger had overcome his sense of discretion and that he ran into the vehicle di-

rectly ahead of him like the person who kicks the chair over which he stumbles.

The accident occurred at 4:55 p.m., in full summertime when daylight is still flooding the sky and the streets. Between the rear of the plaintiff's car and the front of the defendants' truck there were no physical defects which would have prevented Simmons from seeing Pascale's car. Pascale testified that the road was: "Pretty straight, you can see a good bit, you can see a thousand feet if you want. I think I looked about 200 feet."

Why did not Simmons see the car in the street ahead of him? Pascale testified that he was in a stationary position for approximately two minutes twenty-five feet behind the International truck which in turn was twenty-five feet behind the station wagon. This three-car parade could not have been missed by any driver looking ahead as by law he is required to look ahead. Simmons did not even deny seeing the car. His only explanation for smashing into the stopped car in full view ahead of him was that his brakes failed and he was "mad." The jury found that this kind of an explanation was not enough to wipe out the imputation of negligence made out by the plaintiff's evidence.

Did Simmons exercise the reasonable care which was dictated by the facts? Did he have his car under the control required by The Vehicle Code (Act of 1959, November 19, P. L. 1531, §1, 75 PS §1002)? In the case of *Cirquitella v. Callaghan,* 331 Pa. 465, this Court said: "Where two persons are driving vehicles in the same direction on a city street, it is the duty of the driver of the rear one to be vigilant, and ordinarily to have his car under such control as to be able to prevent a rear-end collision in the event the front vehicle suddenly stops." The instant case presents a stronger fact situation against the defendants than that in *Cirquitella* because here the plaintiff concededly had been

stopped on the street for about two minutes prior to the collision.

In attempted support of its action ordering a new trial the Court below cited only one case (*Richardson v. Patterson*, 368 Pa. 495), which is really no support at all. In that case the automobile collision there involved occurred on the plaintiff's side of the highway. The plaintiff testified: "This car· [the defendant's] came across the medial strip and into my car, crashed into my car." This statement in itself would entitle the plaintiff's case to go to the jury, but because at another point in his testimony the plaintiff said that the defendant's car "skidded or crossed over the medial strip" the Court held: "Had the plaintiff been content with proving that the collision occurred in the westbound lane where Mrs. Patterson's car, proceeding eastwardly, should not have been, the burden would have been upon the defendant to offer exculpatory proof if she wished to be found not guilty of causative negligence." This statement ignored the principle of law that "where in one part of plaintiff's testimony [he] is entitled to have the case submitted to the jury and in another part [he] is not, it is for the jury to reconcile the conflicting statements and determine which shall prevail." *Greene v. Philadelphia*, 279 Pa. 389; *Bisaillon v. P. R. T.*, 84 Pa. Superior Ct. 153.

While skidding may not be regarded, under the cases, as negligence per se, it is obvious that it would take but little evidence of excessive speed and inattention to show that under certain circumstances the skidding would not have occurred had proper caution been exercised.

Thus, it is fallacious to argue, as the court below did, and as the defendants here repeat, that if the plaintiff had merely shown that he had been struck in the rear by the defendant's truck, his case would have been for the jury, but because by speaking the

whole truth and relating what the defendant Simmons said, the case is to be taken away from the jury. Such an argument has the aspects of recommending guile; it gives the impression of stating that a trial should be a game of wits and not a candid disclosure of reality. Moreover, it places upon the plaintiff the strange burden of vouching for the truth of his opponent's words. Pascale did not know and would have no way of knowing whether Simmons was telling the truth or not when he said his brakes failed. Nor was it Pascale's concern, and certainly not his duty, to show that the brakes failed because they were defective and that Simmons knew they were defective. Suppose Simmons had said that he ran into the plaintiff's car in order to avoid striking a child, would the plaintiff then have had the obligation to find and produce the hypothetical child?

When Simmons said his brakes failed, it was his responsibility, if he intended to use that assertion in exculpation of his alleged fault, to show that in fact they did fail and that they failed through no fault of his own. Not only did Simmons not make any explanation in this regard at the time of the accident; he made no attempt to explain this all crucial assertion at the trial itself. In fact, he did not even take the stand to testify, nor did any of the other defendants testify. The defendants produced no evidence at all.

In view of what has been stated, it is easy to understand why the jury returned a verdict for the plaintiff and it is clear that the facts justified the verdict. The case was well tried by both counsel, it was presided over properly by the trial judge whose foresight, contrary to the accepted proverb, was better than his hindsight, and there is no reason whatever to have the case tried again.

The defendants have also argued that the evidence produced by the plaintiff to prove his damages did not accord with proper standards. We find no error in that proof, as we find no error in the rest of the case,

The order of the lower court calling for a new trial is reversed, and we direct that the verdict of the jury be reinstated.

Mr. Justice BENJAMIN R. JONES and Mr. Justice EAGEN concur in the result.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I would affirm the Order of the lower Court which granted a new trial and dismissed defendants' motion for judgment non obstante veredicto.