Campbell *v.* Fiorot, Appellant.

Argued April 22, 1963. Before BELL, C.J., MUS-
MANNO, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*E. Jerome Brose,* with him *Danser, Brose & Post-wistilo,* for appellants.

*Norman Seidel,* with him *James C. Hogan, Andrew L. Herster, Jr., Robert H. Littner,* and *Hogan & Scott,* and *Gross & Herster,* and *Mindlin, Sigmon, Briody & Littner,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, June 5, 1963:
Sterling Campbell and his son Clifford Campbell were killed on December 8, 1960, at about 5:30 in the morning, when the car in which they were riding came into collision with the trailer of a tractor-trailer being driven by Leonard C. Parsons of the Fiorot Trucking

Company in Northampton County at a point on Tatamy-Bushkill Park Road between Northwood Avenue and Walter Avenue. The administrators of the estates of the deceased Campbells brought Survival actions against the owners of the Fiorot Trucking Company and the driver Leonard C. Parsons. The jury returned a verdict for the defendants. The plaintiffs moved for a new trial which the Court allowed. The defendants appealed.

The record would indicate that the accident happened, briefly stated, as follows: Leonard C. Parsons, his tractor-trailer loaded with 39,500 pounds of slate slabs (each one weighing some 50 pounds) was descending the steep down-grade of Tatamy Bushkill Park Road, which was wet and slippery from falling snow which melted as it settled on its macadam surface, proceeding at a speed of some 30 to 35 miles per hour, a large sign off the highway proclaiming SLOW because of the dangerous grade and a sharp curve, when as he passed Northwood Avenue, he saw lights approaching from the opposite direction. Applying his brakes the trailer jackknifed to his left, straddling the northwardly lane in which the Campbell car was moving, and hitting the Campbell car latitudinously, avalanching the Campbells with the crushingly weighty slate slabs, killing them instantly.

At the trial, police officer Louis Kowitz, called by the plaintiffs, testified to a conversation he had had with the Parsons shortly after the accident wherein Parsons said that his trailer had "slid" over to the other side of the road. The trial judge, in charging the jury said: "While skidding, in and of itself, is not negligence it may be occasioned or may be the result of negligence. Where, as here plaintiff's case establishes that the accident resulted from the skidding of defendants' vehicle, plaintiff must go on to prove by the fair weight or preponderance of the evidence

that the skidding resulted from the negligence of the defendant Parsons."

This instruction was wrong since the plaintiffs did not establish that the accident resulted from the skidding of the defendants' vehicle. The court ordered a new trial. The defendants maintain the charge was correct. They seem to be of the impression that once the word "skidding" appears in the plaintiff's presentation of his cause, his case becomes an uncontrolled sled which toboggans out of the courtroom unless he can show how, why, when and where the skidding of the opposite party occurred.[1] The word "skidding" has no such automatic self-destroying connotation in the jurisprudence of this Commonwealth. If it has, it is repudiated here and now.

The genesis of the idea which the appellants are urging as unbudgeable stare decisis probably appeared in the case of *Johnson v. American Reduction Co.,* 305 Pa. 537. There, an automobile attempted to pass a wagon, the horses slipped on ice, the wagon skidded and struck the automobile, killing the plaintiff's decedent. The plaintiff contended that the accident occurred because the defendant's driver "jerked his horses toward the curb," and that this jerking was the proximate cause of the accident. Justice DREW, speaking for the Court, said that if the accident happened in this manner, the defendant's act constituted negligence, and the verdict, which had been returned in the court below, should not be disturbed. He said, however, that the evidence did not substantiate this claim and accordingly sustained the judgment n.o.v., which

---

[1] We will not make any point of the fact that Parsons used the word "slid" and not "skid" in describing the accident. While there can be a lexicographical difference between "slid" and "skid", it is not apparent that that difference applied here. Thus we will accept the word "slid" in the meaning understood by the Court below, namely, "to skid."

had been entered by the lower court. Then, in summing up the case, he made the broad statement that: "The skidding of a vehicle does not of itself establish or constitute negligence. It is encumbent upon the plaintiff to prove the skidding-resulted from the negligent act of the defendant; otherwise he is absolved from the consequences." This ample assertion has undoubtedly caused a great deal of misunderstanding.[2] It was not necessary in justifying the ratio decidendi. It was like firing a shotgun to bring down a butterfly. In attempted buttressing of this thesis, Justice Drew cited the case of *Ferrell v. Solski,* 278 Pa. 565, which had nothing whatever to do with skidding, the word not having been mentioned once in the entire opinion written by Justice Sadler.

Then came the case of *Richardson v. Patterson,* 368 Pa. 495, where the shotgun spread even more widely. There, the plaintiff Richardson testified that while he was driving westwardly on the Pennsylvania Turnpike the defendant's car, being driven by Mrs. Patterson in an eastwardly direction, skidded across the medial strip and struck Richardson on *his* side of the highway. The Majority Opinion in that decision, a strong dissenting opinion having been filed by Justice Ladner, said: "Had the plaintiff been content with proving that the collision occurred in the westbound lane where Mrs. Patterson's car, proceeding eastwardly, should not have been, the burden would have been upon the defendant to offer exculpatory proof if she wished to be found not guilty of causitive negligence. The presence of an automobile on the wrong side of a highway is prima facie evidence of the driver's negligence."

---

[2] That the *Johnson* case long ago ceased to represent current law is evident from the statement made therein, namely: "It is not negligence per se to ignore a statutory duty in driving a vehicle."

This kind of a ruling amounts practically to an invitation to strategic testimony instead of forthright testimony. Although the plaintiff saw the defendant skid across the medial strip and so stated, the Court suggests he should not have so stated because, and here is the blast of the shotgun, "the explanation of how the Patterson (defendant) car came to be in the wrong traffic lane was supplied by the plaintiff himself when he offered evidence that it was the result of skidding." But the plaintiff's statement was no explanation of the *cause* for the defendant's car being on the wrong side of the highway. No matter how the defendant found herself in the wrong lane, she was where she had no right to be, and it was her obligation to explain what she was doing there, and how she got there. The majority opinion cited, as authority for its decision, the telltale above-quoted declaration in the *Johnson* case, supra, and then added: "That rule has been frequently recognized and reiterated." It may have been frequently reiterated, but it is still error. It does not comport with the law and certainly not with fundamental justice, logic or reason.

When a motorist is on his right side of the highway, obeying all the rules of the highway, being careful, cautious and considerate of the rights of others, and suddenly he sees coming toward him, like a gargantuan genie, a destroying force, it is not for him to explain how and why the invader got into his way. Certainly a pedestrian on the sidewalk, when he is struck by a car which skids from the highway on to the sidewalk, injuring him, is not required by the law to employ mechanics to inspect the invading vehicle, and surveyors to measure the distances, and to look for witnesses to testify to the undue speed, mechanical difficulties or other causes for the intruder's violent trespassing.

In the case of *Griffith v. V. A. Simrell & Son Co.*, 304 Pa. 165, 168, Justice SCHAFFER announced the true

and just rule: "Irrespective of any question of speed, we think the presumption of negligence arises where it appears that the driver of an automobile permits his car to deflect from its course and to dash or *skid* across a highway and injure a person on the sidewalk." (Emphasis supplied.)

The rule is no different where persons in automobiles are involved. In *Cook v. Miller Transport Co.*, 319 Pa. 85, 88, this Court held that the driver of a vehicle must "exercise the due and necessary care demanded by that [wet and slippery] condition of the street." It said further: "In Prinz v. Lucas, 210 Pa. 620, and McGettingan v. Quaker City Automobile Co., 48 Pa. Superior Ct. 602, it is held that drivers of automobiles are chargeable with knowledge that their cars may *skid* or slue, and must guard thereagainst." (Emphasis supplied.)

In *Schulz v. Reading Transp. Co.*, 354 Pa. 373, Chief Justice MAXEY cited with approval the case of *Louis DeAntonio v. New Haven Dairy Co.*, 105 Conn. 663, where the Supreme Court of Connecticut said: "It appeared that he [the driver of the truck] was entirely familiar with the road and with its general condition on the morning in question, knew the truck, its weight and that of its load, and its characteristics, and it was for the jury to determine whether the *skidding* was not reasonably to be anticipated and more effectively guarded against." (Emphasis supplied.)

In *Pascale v. Simmons*, 406 Pa. 476, we said: "It would take but little evidence of excessive speed and inattention to show that under certain circumstances the skidding would not have occurred had proper caution been exercised."

In the case of *Nixon v. Chiarilli*, 385 Pa. 218, the plaintiff was injured when the defendant's car drove over to the plaintiff's side of the road and struck him. The defendant contested liability on the same proposi-

tion asserted by the appellants in the case at bar, namely, that the plaintiff's evidence showed that the defendant was on his wrong side of the road because of skidding, and that, therefore, it was the obligation of the plaintiff to show that the skid resulted from negligence; otherwise, the plaintiff's case would "evaporate." Of course, the defendant cited *Richardson v. Patterson*, supra, in support of his contention. This Court, speaking through Justice CHIDSEY, distinguished the *Richardson* case from the *Nixon* case by stating that "in the *Richardson* case the explanation as to how the defendant's car came to be in the wrong traffic lane was supplied by the plaintiff's case when he and his witnesses testified that it was the result of skidding," whereas in the *Nixon* case the plaintiff said his knowledge of the defendant's skidding came from the defendant himself. This Court thus affirmed the judgment returned for the plaintiff in the court below, but it could have done so without rationalizing the *Richardson* case which, it must now be obvious, cannot be used as an authority for any situation similar to the one presented in that lawsuit.

Even if the plaintiff specifically states that the accident was caused by skidding of the defendant's car, but he also gives other reasons which spell out negligence, regardless of skidding, the case is still for the jury. (*Greene v. Philadelphia*, 279 Pa. 389, *Bisaillon v. P.R.T.*, 84 Pa. Superior Ct. 153.)

Where the circumstances of themselves impute negligent conduct to the defendant, the plaintiff's descriptive words do not ipso facto wipe away the factually demonstrated negligence. For instance, if it is established that the defendant was driving at 125 miles per hour before he skidded into the plaintiff's car, the plaintiff's use of the word "skidding", in describing the accident, would in no way save the defendant from the necessity of explaining away his highly dangerous speed.

What the rule about skidding amounts to is simply this. If the plaintiff, in a given accident, shows that the defendant was proceeding at a proper speed, that he (the defendant) was on his own proper side of the road, that the road was in good repair and dry, and he (the defendant) was obeying all the rules of the highway, and the plaintiff then merely adds that the defendant's car skidded, the plaintiff, in that kind of a situation, will not have made out a prima facie case of negligence. But where, as here, the defendant's tractor-trailer appropriated both lanes of the highway, throwing before the plaintiffs' decedents a wall of body-crushing slate, the plaintiffs had no obliga-. tion, in making out a prima facie case, to explain how and why this highway monopolization occurred. It so happens, in any event, as already indicated that the explanation for the skidding did not come from the plaintiffs or anyone representing the plaintiffs. The police officer Kowitz did not in his direct testimony testify to this conversation with Parsons. It was only when defendants' counsel cross-examined Parsons with regard to that conversation that plaintiffs' counsel then brought out what Parsons had said about "skidding." Thus, even under the rule in *Nixon v. Chiarilli,* the plaintiffs made out a prima facie case.

Our latest pronouncement on the subject here under discussion is to be found in *Pascale v. Simmons,* supra, 406 Pa. 476. There, the plaintiff Pascale was injured when his car was struck in the rear by the car of the defendant Simmons. Immediately after the collision, Simmons said: "I am sorry but my brakes failed me." Because this statement was introduced into the case by witnesses for the plaintiff, the defendant argued that there was a burden on the plaintiff to show how and why the brakes had failed. It was also argued, as was done in the *Richardson* case, that because the plaintiff produced more than was required to prove

his case, the burden was thrust upon him to prove what otherwise would not have been within the purview of his evidentiary responsibility. To this argument we replied: "It is fallacious to argue, as the court below did, and as the defendants here repeat, that if the plaintiff had merely shown that he had been struck in the rear by the defendant's truck, his case would have been for the jury, but because by speaking the whole truth and relating what the defendant Simmons said, the case is to be taken away from the jury. Such an argument has the aspects of recommending guile; it gives the impression of stating that a trial should be a game of wits and not a candid disclosure of reality. Moreover, it places upon the plaintiff the strange burden of vouching for the truth of his opponent's words. Pascale did not know and would have no way of knowing whether Simmons was telling the truth or not when he said his brakes failed. Nor was it Pascale's concern, and certainly not his duty, to show that the brakes failed because they were defective and that Simmons knew they were defective. Suppose Simmons had said that he ran into the plaintiff's car in order to avoid striking a child, would the plaintiff then have had the obligation to find and produce the hypothetical child?"

The appellants present in their brief, apparently more as a melancholy observation, rather than as an aggressive argument, the proposition that under the Dead Man's Rule, Parsons could not have testified as to why he happened to be on the wrong side of the road. Whether the Act of 1887, May 23, P.L. 158, §5 (e), 28 P.S. §322, known as the Dead Man's Rule should be repealed, amended or modified is a subject for legislative debate and decision and not one for judicial surgery. That the Rule sometimes does drop as a barrier in the middle of the road, shutting off explanations which would be helpful in solving pending

issues, cannot be doubted. On the other hand, experience would support the view that it works more often on the side of justice than injustice. To allow the survivor of a clash between contending individuals to tell the story of what occurred, giving himself the advantage on every controversial point when his opponent cannot rise from his grave to refute, deny or answer, spells out an unfairness so clearly that one need not linger on the subject unduly. However, it is to be noted here that Parsons could have testified to the nature of his conversation with Officer Kowitz if he believed Kowitz had not correctly related what he (Parsons) said to him. The fact that Parsons in no way contradicted Kowitz's narrative as to what occurred would suggest that he was satisfied Kowitz had taken no liberties in relating the conversation. Moreover, Parsons had written out a statement which generally confirmed Kowitz's testimony.

Order of the court below affirmed.

Mr. Justice COHEN concurs in the result.