## Commonwealth v. Thompson

*S. F. Bonavita*, for Commonwealth.

*R. P. Eaton*, for defendant.

FLICK, P. J., September 17, 1963.—On information of Trooper George Kaleina of the Pennsylvania State Police, defendant Edward L. Thompson was charged with violation of section 1006 of The Vehicle Code of April 29, 1959, P. L. 58, on December 31, 1962, in Southwest Township, Warren County, upon Route No. 61001, a public highway of the Commonwealth, in that he did then and there operate a certain motor vehicle, to wit: a Ford sedan, and did fail to yield at least one-half of the highway to an oncoming vehicle.

Hearing before a justice of the peace was waived and defendant filed bond for appearance and trial before a judge of the court of quarter sessions. At the trial, held March 22, 1963, testimony for the Commonwealth was given by Trooper Kaleina and by Anthony Helinsky, operator of the oncoming vehicle which was struck by the vehicle operated by defendant. The trooper was cross-examined by defendant's counsel but Mr. Helinsky was not. For defendant, testimony was given by defendant and no other witnesses were called.

Section 1006 of The Vehicle Code provides as follows: "Drivers of vehicles proceeding in opposite direc-

tions shall pass each other to the right, each giving to the other at least one-half (½) of the main traveled portion of the highway."

There is no conflict in the testimony as to any material fact. The proven facts are as follows: Defendant lives in Titusville, Crawford County, close to the city line. When he arrived home from work on the evening of December 31, 1962, his neighbor, Howard Roberts, asked him if he would help get the neighbor's car started. The car owned by Roberts was a 1957 Ford sedan and Roberts also had a Ford pick-up truck. With the truck he pulled the sedan into the street with defendant at the wheel of the sedan. Roberts then hooked a chain on to the front of the sedan and the rear of the truck and proceeded to pull the sedan onto the highway towards east Titusville with defendant at the wheel. It was dark enough so that the truck had headlights on, as did the oncoming traffic on the highway. The towed car, with defendant at the wheel, had its parking lights on. The chain between the two cars was from six feet to eight feet in length and defendant could see nothing directly ahead of him but the tailgate of the truck.

Before starting the operation to start Robert's car by towing it, Roberts and defendant talked over the matter of how fast the car should be towed and defendant suggested that Roberts drive the truck at a speed of about 30 miles per hour because the sedan had an automatic transmission and according to defendant's understanding it would have to be going at least 30 miles per hour to start. At this speed the two vehicles proceeded through east Titusville and toward Enterprise, on the two-lane highway. The accident occurred just over the Warren County line in Southwest Township.

The weather was clear. The road was somewhat wet and icy along the outer edges of the pavement. There

were some spots where the highway was icy in the center. It had been salted some time prior to the accident. The sedan started twice during the time it was being towed but the motor died and the tow continued. On one occasion when the motor of the towed car started, defendant flashed the headlights, blew the horn and applied the brakes. They were going upgrade at the time and Mr. Roberts did not stop the truck but geared down and continued up the grade and the motor of the towed car stalled.

The truck and the towed car passed several vehicles going in the opposite direction, toward Titusville. The vehicle being operated by Mr. Helinsky was also southbound toward Titusville. After two or three of the southbound cars had passed, and just as Mr. Helinsky's car had started to pass the truck, the towed car skidded on a patch of ice and slid sideways. Defendant turned the wheels in the direction of the skid in order to obtain control of the towed car. The skid had caused some slack in the chain between the two vehicles and as the towed vehicle straightened up the slack went out of the chain with a sudden snap which threw the front end of the towed car to the driver's left and into the lane of oncoming traffic. The front end of Mr. Helinsky's car had just passed the rear end of the truck at this moment and it was struck about a foot in front of the door on the driver's side by the left front of the towed car.

The truck did not leave its own lane of traffic and was not injured. Considerable damage was done to the front end of the towed car and to the left side of Mr. Helinsky's car. Defendant also suffered personal injuries as a result of this collision.

Trooper Kaleina was called to the scene of this accident and arrived about 9 p.m. The Helinsky car was still in the southbound lane of traffic with its left side badly damaged. It had not been moved. The towed car

which had been operated by defendant was parked on the opposite side of the road heading north, with its front end badly damaged. There were no skid marks on the highway. After talking to the parties involved Trooper Kaleina filed an information before justice of the peace Thompson of Grand Valley charging defendant with failing to yield one-half of the right of way to an oncoming vehicle in violation of section 1006 of The Vehicle Code.

This is a difficult case. Mr. Helinsky was travelling in his own lane of traffic and there is nothing in the evidence that he was not going at a reasonable rate of speed. He could not see the car which was being towed by the truck until it suddenly swerved out from behind the truck and struck the side of his vehicle. It is possible he would have known that a car was very close behind the truck if the towed car had had its headlights on instead of its parking lights but there is no indication that this would have changed the situation in any way.

Defendant did not deliberately drive into the oncoming traffic. It is not a situation in which he was faced with some sudden emergency ahead of him which caused him to turn his wheels so that he would go into the oncoming lane of traffic. The weather was clear. The highway was somewhat wet and icy along the outer edges but the paved portion was generally clear. There were some spots which were icy in the center. Defendant was unable to see the road ahead of him and could have done nothing to change the situation.

The court has been unable to find any case involving a prosecution for violation of The Vehicle Code which was at all similar to the instant case. Practically all of the cases cited in 75 PS §1006, under the pertinent section of The Vehicle Code, and in 27 P. L. Encyc. §98, deal with trespass actions for negligence. The latest negligence action dealing with a situation in

which defendant's car skids into the oncoming lane of traffic seems to be Campbell v. Fiorot, 411 Pa. 157 The opinion is by Mr. Justice Musmanno and it limits the prior rule in regard to skidding vehicles. The court said, page 165:

"What the rule about skidding amounts to is simply this. If the plaintiff, in a given accident, shows that the defendant was proceeding at a proper speed, that he (the defendant) was on his own proper side of the road, that the road was in good repair and dry, and he (the defendant) was obeying all the rules of the highway, and the plaintiff then merely adds that the defendant's car skidded, the plaintiff, in that kind of a situation, will not have made out a prima facie case of negligence."

Under this rule, a prima facie case of negligence has not been made out against defendant. If the jury cannot pass on the question of his negligence, how can it be said that it has been proven beyond a reasonable doubt that he violated section 1006 of The Vehicle Code? If there was anything at all in the record to indicate the possibility of careless driving on the part of defendant, the situation would be different. As it is, on the evidence produced, the court cannot find that the good Samaritan was a law-breaker. In fact, the evidence shows that he was driving carefully under the circumstances and the unfortunate accident is due to a combination of circumstances which he did not produce and which could not occur once in a million times.

For the foregoing reasons, the court must find defendant not guilty as charged and makes the following

## Order

And now, September 17, 1963, defendant having waived a jury trial and having been tried before the court and found not guilty for the reasons stated in the foregoing opinion, it is hereby ordered that the

charge against defendant is dismissed and he is discharged, and the costs of this proceeding are to be paid by Warren County.