O'Neil *v.* O'Neil, Appellant.

Argued November 9, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*B. Patrick Costello,* with him *Smith, Best and Horn,* for appellant.

*Louis E. Sensenich,* for appellees.

OPINION BY WRIGHT, J., December 16, 1964:

In the early evening of November 29, 1959, on Route 19 some five miles northeast of Greensburg,

Pennsylvania, there was a collision between motor vehicles traveling in opposite directions and operated, respectively, by Mary L. O'Neil and Howard E. Wolf. Kathleen T. O'Neil was a passenger in the car operated by her sister, Mary, and received serious injuries in the collision. Kathleen and her father, James M. O'Neil, instituted a trespass action against Mary which resulted in a verdict for Kathleen in the sum of $5,000.00, and a verdict for James in the sum of $2,437.98. Kathleen filed a motion for a new trial which was subsequently abandoned. Mary filed a motion for judgment n.o.v. which was denied by the court below. This appeal followed.[1] We must view the evidence in the light most favorable to the winners of the verdicts: *Costello v. Wyss, Inc.*, 200 Pa. Superior Ct. 568, 190 A. 2d 170.

The record discloses that Mary was an employe in the office of admissions at Seton Hill College. She was traveling from Binghamton, New York, to Greensburg in an automobile owned by the college. Her sister Kathleen and two other girls, all three students at the college, were accompanying Mary on their return to school after Thanksgiving vacation. Mary was an inexperienced driver, having had an operator's license for only two months. The party left Binghamton after breakfast. The weather was "snowy, possibly rain mixed with snow". The car was not equipped with chains or snow treads. A stop was made in Altoona for dinner at about six o'clock in the evening. At that time the operator of a car traveling from Pittsburgh to Syracuse via Altoona volunteered the information that the road between Altoona and Pittsburgh had become very dangerous. The party proceeded west on Route 22 to New Alexandria where a turn

---

[1] As there were two verdicts, there should have been two judgments and two appeals. However, this procedural discrepancy is not material in view of our disposition of the case.

south was made on Route 119. According to Kathleen's testimony, the road conditions had been "very bad, very icy". Her sister Mary was nervous and tense. Kathleen suggested stopping for a cup of coffee and a few minutes of relaxation, but Mary "just wanted to get back". The road surface on Route 119 was wet with patches of ice. The car failed to properly negotiate a right turn, and proceeded in the wrong or northbound lane and collided head-on with the Wolf car. In the words of Judge KEIM: "It is apparent that the car in which Kathleen T. O'Neil was riding skidded into the opposite lane of traffic, however, it is not clear whether the skidding took place before or after the oncoming automobile was sighted by defendant driver, and whether the driver of the car in which plaintiff was riding applied her brakes before or after reaching the icy spot. The only testimony in so far as applying the brakes is concerned, was what the defendant, Mary L. O'Neil told the plaintiff . . . 'that after the car hit the ice, she apparently applied her brakes, which threw the car into a skid and sent it into the other lane' ".

According to the statement of the question involved on this appeal, it is the contention of Mary's counsel that Kathleen and her father did not make out a case of negligence because their own evidence established that Mary "was proceeding at a proper speed on her own side of a wet road and while obeying all the rules of the highway came upon a patch of ice on the roadway which caused her to skid into the other lane". The gist of appellant's contention is that "the plaintiffs' proof showed conclusively that the accident did in fact result from the skidding of the defendant's vehicle". While the case of *Richardson v. Patterson*, 368 Pa. 495, 84 A. 2d 342, is not cited in the brief, appellant is in effect relying on the principle enunciated in that case, namely, that a nonsuit

is properly entered where the plaintiff proves that defendant's automobile was on the wrong side of the highway because it skidded and there is no evidence that the skid resulted from negligence. The decision in the *Richardson* case startled the legal profession, and it has since been repudiated. In *Nixon v. Chiarilli*, 385 Pa. 218, 122 A. 2d 710, in which the *Richardson* case was discussed and distinguished, it was held that the operation of an automobile on the wrong side of the highway was sufficient to carry the case to the jury on the question of the operator's negligence. We discussed this problem in *Highway Express Lines v. General Baking Co.*, 190 Pa. Superior Ct. 597, 155 A. A. 2d 450, in which we held that the question of negligence in skidding cases was for the jury. The following quotation from our opinion in the *Highway Express Lines* case is here pertinent (citations omitted):

"One who operates a motor vehicle on the wrong side of the highway is prima facie negligent, and that fact alone is sufficient to carry the case to the jury . . . In the case at bar, the defense was that the presence of Early's motor vehicle on the wrong side of the highway was due to skidding. It has been held that skidding in and of itself is not evidence of negligence . . . However, the operator of a motor vehicle is bound to take into account the condition of the highway . . . and skidding may be and frequently is the result of negligence . . . Thus the question of negligence in skidding cases becomes an issue of fact for the jury".

Any doubt as to the present attitude of our Supreme Court on the problem was removed by the opinion of Mr. Justice EAGEN in *Matkevich v. Robertson*, 403 Pa. 200, 169 A. 2d 91, wherein it was held that the operation of an automobile on the wrong side of a highway was in itself prima facie evidence of negligence and sufficient to carry the case to the jury on

490

that question. To the same effect is the subsequent opinion of Mr. Justice MUSMANNO in *Campbell v. Fiorot*, 411 Pa. 157, 191 A. 2d 657.

Before concluding, it may be appropriate to note that, in the presentation of their case, Kathleen and her father did not rely solely on Mary's presence in the wrong lane. There was evidence, inter alia, concerning Mary's inexperience as an operator, as to her knowledge of the dangerous condition of the highway, and as to the absence of chains. Cf. *Benn v. Brown*, 409 Pa. 22, 185 A. 2d 326. All of these circumstances were for the consideration of the jury. Mary did not appear at the trial and produced no evidence. "No matter how the defendant found herself in the wrong lane, she was where she had no right to be, and it was her obligation to explain what she was doing there, and how she got there": *Campbell v. Fiorot*, supra, 411 Pa. 157, 191 A. 2d 657. And see *Lindner v. Friedel*, 414 Pa. 436, 200 A. 2d 771.

Judgment affirmed.