Isaak F. KRUGER, Evonne
J. Kruger, h/w

v.

SUBARU OF AMERICA, INC.

No. Civ.A. 95–3810.

United States District Court,
E.D., Pennsylvania.

March 9, 1998.

Craig Thor Kimmel, Delia A. Clark, Kimmel & Silverman, P.C., Blue Bell, PA, for Plaintiff.

Thomas M. Hinchey, White & Williams, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

In this case, the plaintiffs contend that they purchased a defective automobile manu-

factured by the defendant. The parties reached a settlement agreement that included the plaintiffs' returning the vehicle, but it has since been stolen making the agreement impossible to perform.[1] The defendant has now moved for summary judgment contending that the plaintiffs cannot "sustain their burden of proof regarding either defect in the subject vehicle or the appropriate measure of damages." (Def.'s Mot. for Summ. J. at 6). For the reasons that follow, I will grant in part and deny in part the defendant's motion.

## I. STANDARD OF REVIEW

I must grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). I must resolve all inferences, doubts, and credibility questions in favor of the non-moving party; however, the non-moving party must do more than merely rely on the allegations in its complaint. Rather, it must produce evidence which would reasonably support a jury verdict in its favor. *See Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir.1996) (stating that if moving party carries its burden of showing absence of genuine issue of fact, "the opponent may not rest on allegations in pleadings, but must counter with specific facts which demonstrate that there exists a genuine issue for trial").

## II. FACTUAL BACKGROUND

The Krugers purchased a new 1995 Subaru Legacy from Wilkie Subaru for $23,983.19 on or about October 28, 1994.[2] In connection with the sale, Subaru provided the Krugers with a limited warranty for three years or 36,000 miles. Shortly after the Krugers' purchase, on November 2, 1994, Wilkie repair invoices reveal that the plaintiffs had the car towed to Wilkie because the engine had overheated, there was no oil in the engine, and the engine was making a loud, tapping noise. Wilkie removed and replaced a radiator hose and the thermostat. On November 17, 1994, the plaintiffs returned the car to Wilkie for a road test because they had heard a loud, crunching-type noise when braking. Wilkie then resurfaced the front brake rotors. On December 14, 1994, the plaintiffs again requested that Wilkie check the brakes because a "loud krunching [sic] type noise" occurred when they applied the brakes. Wilkie modified the front struts. On January 12, 1995, the car was again road tested for the loud, groaning-type noise that accompanied braking. Wilkie determined that the brakes were "excessively warped" and removed and replaced both front brake rotors and disks. Finally, on February 17, 1995, Wilkie performed another road test to investigate the noise coming from the brakes and resurfaced the front brake rotors. Although the Krugers state in their memorandum of law that on or about May 23, 1995, they returned to Wilkie for repairs to the brakes, they do not submit any evidence of further repairs (i.e., a repair invoice for that date) after February of 1995, and the Krugers admit that prior to their bringing this action, the brakes had never failed to stop the car. It was only after they filed the complaint that Mrs. Kruger alleges that the brakes failed, causing a collision.

The Krugers filed their complaint on June 19, 1995. In their complaint, they alleged the following causes of action: count one, under the Pennsylvania Automobile Lemon Law, 73 Pa.Stat.Ann. §§ 1951–1963;[3] count

---

**1.** After being notified of the settlement, the Clerk of Court dismissed the action with prejudice pursuant to Local Rule 41.1(b). (*See* Order dated Oct. 1, 1996). However, because the car was stolen shortly before the plaintiffs were to return the car to Subaru as required under the terms of the settlement agreement, the plaintiffs moved to vacate the order dismissing the case. I granted that motion finding sufficient justification existed. (*See* My Order dated Feb. 27, 1997).

**2.** The plaintiffs have not attached any supporting affidavits or documents to their opposition brief. However, the plaintiffs, in their brief, do refer me to the various repair invoices and the sales contract which they attached to their complaint. The defendant has not objected to the admissibility of these documents for purposes of this motion.

**3.** The plaintiffs agreed to withdraw this count. Despite the plaintiffs' allegation to the contrary, without the car they are no longer considered "purchasers" as required to have a cause of action under the Pennsylvania Lemon Law. *Reeves v. Morelli–Hoskins Ford, Inc.*, 415 Pa.Super. 431, 609 A.2d 828, 830 (1992). Thus, I will dismiss this count with prejudice.

two, under the Magnuson–Moss Warranty Act (MMWA), 15 U.S.C. § 2301 *et seq.;* count three, under the Uniform Commercial Code, 13 Pa.Cons.Stat.Ann. § 1101 *et seq.;* and count four, under the Pennsylvania Unfair Trade Practices and Consumer Protection Act (UTPCPL), 73 Pa.Stat.Ann. § 201–1 *et seq.*

The parties proceeded to arbitration where Evonne Kruger testified that on June 27, 1995, after a car she was following stopped unexpectedly, she applied the brakes but the brakes partially failed causing her to slide into the car ahead of her.[4] As a result of the arbitration proceedings, the plaintiffs recovered a verdict in their favor solely on the Lemon Law claim. Subaru demanded a trial de novo. Subsequently, the parties settled the matter;[5] however, before the Krugers were scheduled to return the car to Subaru as required pursuant to settlement agreement, it was stolen in October of 1996.

## III. DISCUSSION

### A. Plaintiffs have shown genuine issue of fact regarding liability on their breach of warranty claims.

The parties agree that the case is now proceeding solely on the plaintiffs' breach of warranty claims, i.e., counts II through IV. Consequent to this narrowing of the plaintiffs' case, Subaru first argues that the Krugers have not shown that it breached any

---

4. The plaintiffs have not amended the allegations in their complaint to reflect this accident.

5. Under the terms of the settlement agreement, once the plaintiffs returned the car, Subaru would pay them $23,169.93.

6. Contending that the Krugers are proceeding under the malfunction theory of proving a defect, Subaru cites *Lonon v. Pep Boys, Manny, Moe & Jack,* 371 Pa.Super. 291, 538 A.2d 22, 26 (1988), to support the proposition that where both sides have proffered equally plausible explanations for an accident, the jury may not speculate and choose between them. Subaru invites my attention to its expert's report, which states that application of the brakes after the accident brought "the vehicle ... to a complete, controlled stop within an anticipated stopping distance." (*See* Def.'s Mem. of Law in Support of Mot. for Summ. J., Ex. H at unnumbered p. 3). Subaru contends that Evonne Kruger's negligence in be-

warranty because they have not offered sufficient evidence that there was a defect with the car.

▌ Under Pennsylvania law, in order to prove a breach of warranty, a party must prove, either by direct or circumstantial evidence, that the product was defective.[6] *See generally Altronics of Bethlehem, Inc. v. Repco, Inc.,* 957 F.2d 1102, 1105 (3d Cir. 1992). If a party chooses to prove the defect by circumstantial evidence, it must negate abnormal use and reasonable secondary causes. *Id.* However, I find in this case that there is both direct and circumstantial evidence from which a jury could infer that the car was defective or not as warranted.

Here, the plaintiffs have presented direct evidence of problems with the brakes. *Cf. Pascale v. Simmons,* 406 Pa. 476, 178 A.2d 549, 551–53 (1962) (finding in personal injury case, court concluded jury instruction on product defect not necessary where only evidence was defendant's statement that brakes failed). In addition to Evonne Kruger's testimony that she was involved in an accident on June 27, 1995, while driving the car because the brakes did not properly work,[7] the plaintiffs testified in both the arbitration proceedings and in their depositions that prior to the accident the brakes continually made a loud, grinding sound, which they thought was problematic. (*See* Def.'s Mem. of Law in Support of Mot. for Summ. J., Exs. B, E–G). This noise is further documented in the vari-

---

ing too close to the car in front of her caused the accident on June 27, 1995, not brake-failure. Accordingly, Subaru argues, the plaintiffs have failed to meet their burden of proof because Evonne Krugers' negligence and brake failure were equally plausible explanations for the accident. I reject this argument because plaintiffs contend that they are not proceeding on a malfunction theory and have pointed to other evidence tending to show a defect with the brakes. Furthermore, unlike *Lonon,* this is not a strict liability or personal injury case.

7. Subaru's argument that the plaintiffs failed to produce any evidence that the brakes were repaired after the accident is not dispositive. Subaru does not contend that the plaintiffs ever used the vehicle after the accident, and the evidence shows rather that the plaintiffs placed it in storage for a period of time—the costs of which Subaru is now contesting. Further, the accident occurred after the plaintiffs initiated this action.

ous Wilkie repair invoices, which indicate that Subaru tried to eliminate the noise. (*Id.*, Ex. A). Moreover, despite Subaru's contention that the noise was non-problematic,[8] the plaintiffs have submitted direct evidence of a defect or problem with the brakes in that one invoice indicated that the brakes were "excessively warped," and thus Subaru removed and replaced both front brake rotors and disks. Also, although providing service bulletins which state that high-pitched squeals frequently occur with recently made vehicles, Subaru has not provided any reasonable explanation for the cause of excessively warped brakes, which is, in fact, their own characterization. Significantly, the service bulletin also states that "[a]ll brake noises should not arbitrarily be considered normal." (*Id.*, Ex. D). Accordingly, there is a genuine issue of material fact with respect to the quality of the brakes and a reasonable jury could infer that the brakes were defective, i.e., that the car was not as warranted. It follows that summary judgment must be refused on the issue of liability. *Cf. Simons v. Mercedes-Benz of N. Am., Inc.*, 1996 WL 103796, *5 (E.D.Pa. Mar.7, 1996) (McGlynn, J.) (finding genuine issue of fact where evidence consisted of numerous repair invoices and defendant's expert's report). However, the Krugers' burden of producing evidence does not end there.

**B. Plaintiffs have offered no material evidence of the vehicle's loss of value, and thus Subaru is entitled to summary judgment on plaintiffs' breach of warranty claims.**

Subaru next maintains that because the plaintiffs have abandoned the Lemon Law

claim and because a limited warranty is involved, the typical measure of damages allowed in a Lemon Law action is not available to the plaintiffs.[9] Rather, Subaru contends that the Krugers are limited to the damages in a breach of warranty case under the Pennsylvania Uniform Commercial Code. *See* 13 Pa.Cons.Stat.Ann. § 2714 (plaintiff is entitled to value of car as warranted less value of car in its actual, defective condition at time of acceptance). Subaru then argues that the plaintiffs have not shown the difference in value between the car as warranted and the car as actually delivered and thus have failed to meet their evidentiary burden on an essential element of their case. I agree.

■ Although not necessarily controlling or precisely accurate, the purchase price of the car is some evidence of its value as warranted. *But see K & C, Inc. v. Westinghouse Elec. Corp.*, 437 Pa. 303, 263 A.2d 390, 394 (1970) ("The purchase price is not the relevant factor; the value the goods would have had if they had been as warranted is crucial. It is true that the purchase price is prima facie the value that the goods would have had if they had been as warranted. However, it is possible that the purchaser made a good (or a bad) bargain, and he should not be deprived of the value of his bargain.") (internal citations omitted).[10]

■ In any event, although the purchase price is evidence of the value of the car as warranted, the plaintiffs have failed to present any evidence of the actual value of the car when it was delivered in its allegedly defective condition. The plaintiffs concede this failure. In their opposition brief, the plaintiffs state:

> ue or accept return of the vehicle from the purchaser and refund to the purchaser the full purchase price, including all collateral charges, less a reasonable allowance for the purchaser's use of the vehicle....
> 73 Pa.Stat. § 1955.

---

8. Subaru's expert testified that the noise was not indicative of any problem with the brakes and that Subaru had merely tried to eliminate the noise for customer satisfaction purposes. (*See* Def.'s Mem. of Law in Support of Mot. for Summ. J., Ex. D).

9. The Pennsylvania Lemon Law provides in relevant part:

> If a manufacture fails to repair or correct a nonconformity after a reasonable number of attempts, the manufacturer shall, at the option of the purchaser, replace the motor vehicle with a comparable motor vehicle of equal val-

10. Indeed, absent any allegation that either party was under duress immediately prior to the sale, the purchase price would seem a fair result of intelligent bargaining between two parties. Further, there is no allegation by the Krugers that they secured a great bargain or by Subaru that the Krugers paid too much for the car. Thus, *K & C, Inc.* is not controlling here.

As to 'valuation' of the vehicle with the defects, plaintiffs intend to call Mr. Turner, and a second expert, Michael Daulerio, as experts. Mr. Daulerio is employed as a new and used car buyer/seller and has been for [sic] in the automobile business for over 20 years. He will testify as to what the vehicle would be worth with the defects complained of by plaintiffs, assuming the repair records are accurate and full disclosure of the problem was made by the seller. Should the case go to trial his report will be furnished to defendant and he will be made available for deposition. (Pls.' Mem. of Law in Opp'n to Def.'s Mot. at 14). The plaintiffs apparently misunderstand their burden in contesting a motion for summary judgment. As previously discussed, bald allegations or statements in a legal memorandum regarding what the plaintiffs *will* do to prove their case do not suffice as evidence.[11] Moreover, the plaintiffs have had ample time within which to supplement the record with an affidavit, report, or deposition testimony of their expert. For reasons unknown, they have chosen not to do so. Nor have the plaintiffs submitted a request for additional time to gather such evidence in the appropriate form. *See* Fed.R.Civ.P. 56(f). Accordingly, I am unable to give their plans for trial any weight in my decision on the defendant's motion for summary judgment.

Furthermore, the amount of the insurance proceeds paid to the Krugers after the car was stolen is not evidence of its value when delivered in its defective condition.[12] Nine months had passed. The car had been driven by the Krugers, in spite of the alleged brake problems, for eight of those months. Finally, there is no indication as to what portion, if any, of the $17,327.93 paid by the insurance company was for collision damage and how much was paid for loss through theft.[13] In short, while the insurance proceeds are evidence of the value of a car that had been driven for eight months and had been in a front-end collision, they are not evidence of the value at the time that the Krugers purchased it in its defective condition.[14] Without that evidence, there is no way to compute the difference between the value of the car as warranted and as actually delivered in its defective condition.

In opposition, the plaintiffs contend that pursuant to the MMWA they are enti-

---

**11.** Nor have the plaintiffs submitted evidence supporting the cost of the repairs to the car in connection with the brake defects, which could be deducted from the value of the car as warranted to provide some estimate of the value of the car with its alleged defects.

**12.** Granted, the plaintiffs would not have known at that time that the car was defective, but an expert could have rendered an opinion, based on his or her expertise and knowledge of the alleged defects, of what the value of the car would have then been.

The plaintiffs state that they would "stipulate to accept the difference between the cost of the vehicle plus 'collateral damages' minus the amount received from the insurance proceeds." (Pls.' Mem. of Law in Opp'n to Def.'s Mot. at 13). Ordinarily, however, a party's offer of settlement is not admissible evidence and thus would not be allowed to establish the car's value. *See* Fed. R.Evid. 408.

However, Subaru comments, "[P]resumably the only evidence of the value of the vehicle as of the time it was stolen in its 'impaired condition' is the amount plaintiffs were reimbursed by their insurer, $17,327.93." (Def.'s Mem. of Law in Support of Mot. for Summ. J. at 14). Nonetheless, the crucial time is the time the car was delivered, not the time it was stolen.

**13.** In Mr. Kruger's deposition taking place in August of 1995, he testified that the collision damage amounted to approximately $6,200, and that, at that time, to the best of his knowledge the car had not been repaired. (Def.'s Mem. of Law in Support of Mot. for Summ. J., Ex. I at 54). Although the plaintiffs stated in their memorandum of law in opposition to Subaru's motion that their insurance company initially refused to pay the claim because the brakes were allegedly defective, whether the insurance company later changed its position and whether this sum was ever received prior to the theft and from whom was not stated. Thus, this uncertainty further demonstrates that the insurance payment cannot be used to calculate the value of the car with its defects at the time of purchase.

**14.** This case does not implicate the collateral-source rule. Here, the Krugers purchased insurance not to protect themselves from the hazards of buying a defective product but from the hazards of theft or accident. That there was a collision, a theft, and insurance payment does not preclude recovery for the car's defects. On the other hand, the Krugers cannot collect from both Subaru and the insurance company for the same loss, a loss not caused by Subaru's actions.

tled to a full refund of the purchase price. In making this argument, the Krugers rely on the following relevant portion of the MMWA:

> A consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief. . . .

15 U.S.C. § 2310(d)(1). The Third Circuit has interpreted this section to mean that pursuant to § 2310(d), "a consumer who is damaged by the failure of a dealer or manufacturer to comply with a warranty obligation can file suit to recover the purchase price plus collateral damages." *Suber v. Chrysler Corp.*, 104 F.3d 578, 588 n. 12 (3d Cir.1997). However, I agree with Judge Reed's analysis in *Kruse v. Chevrolet Motor Division* that a refund of the full purchase price presupposes the return of the car to the warrantor. 1997 WL 408039, *2 (E.D.Pa. July 17, 1997) (Reed, J.); *see also* 15 U.S.C. § 2304(b)(2) (stating that "warrantor may require, as a condition to replacement of, or refund for, any consumer product . . . that such consumer product shall be made available to the warrantor"). Thus, because the car is unavailable and because the plaintiffs used the car for eight months, thereby depreciating its value, I conclude that the plaintiffs are not entitled to a full refund.[15]

█ Furthermore, the plaintiffs have brought their UTPCPL claim as a breach of warranty claim. (*See* Compl. ¶ 45 (citing 73 Pa.Stat.Ann. § 201–2(4)(xiv) and stating that Subaru "fail[ed] to comply with the terms of [a] written guarantee or warranty given to the [Krugers] at, prior to or after a contract for the purchase of the [car was] made")).[16]

The UTPCPL allows "actual damages or one hundred dollars ($100), whichever is greater" to be awarded. 73 Pa.Cons.Stat.Ann. § 201–9.2(a). However, the Krugers have failed to present the necessary evidence that they suffered any damages under the breach of warranty claims. Thus, even if the finder of fact concludes from the evidence presented that Subaru breached a warranty, the Krugers would only be entitled to $100.

### C. Consequential damages

#### 1. Plaintiffs have offered no evidence of consequential damages.

█ Turning now to the costs allegedly incurred by the Krugers after the accident, both the UCC and the MMWA allow for recovery of consequential or collateral damages. With respect to these damages, I note that although the Krugers argue that they are entitled to consequential damages such as storage fees, insurance premiums, and rental costs from June 27, 1995, until August 14, 1995, they have not submitted any evidence in support of the amount of those costs, i.e., an affidavit, invoices, canceled checks, credit card statement, or receipts.[17] Nothing. Thus, even if the plaintiffs were entitled to such damages, they have not presented any evidence from which a reasonable jury could find in their favor on this claim. In other words, they have not satisfied the standard for defeating a summary judgment motion.

#### 2. Express warranty limits consequential damages.

Moreover, assuming I were to accept the plaintiffs' bald allegations that they have incurred these costs, such costs are excluded under the express warranty provided by Su-

**15.** The plaintiffs state in their memorandum of law that they believe the car can be located even though it is not in their possession. (Pls.' Mem. of Law in Opp'n to Def.'s Mot. at 6). However, they have failed to produce any evidence supporting this statement, and they have not explained why, if the vehicle might be recovered, there has been no attempt to do so.

**16.** Subaru also argues that, in their complaint, the plaintiffs only allege a breach of warranty based on the noisy brakes. Therefore, Subaru contends, the alleged damages did not result

from any breach of warranty, rather the damages arose because of the automobile accident on June 27, 1995.

**17.** Under the UCC, incidental damages and consequential damages may be awarded for a breach by the seller. *See* 13 Pa.Cons.Stat.Ann. § 2715. Subaru also seems to believe that the plaintiffs are seeking recovery for damages incurred due to the accident. Plaintiffs concede that they are not suing for damages caused by the accident.

baru when the vehicle was purchased. In support of this argument, Subaru points to that section in its warranty which states:

S[UBARU], ITS DISTRIBUTORS AND AUTHORIZED SUBARU DEALERS SHALL NOT BE LIABLE FOR ANY LOSS OF USE OF THE CAR; FOR ANY ALTERNATE TRANSPORTATION, LODGING, FOOD OR TELEPHONE EXPENSES; FOR ANY DAMAGES TO GOODS, COMMERCIAL LOSS, LOSS OF TIME OR INCONVENIENCE; OR FOR ANY OTHER INCIDENTAL OR CONSEQUENTIAL DAMAGES. Some states do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you.

(Def.'s Mem. of Law in Support of Mot. for Summ. J., Ex. C at 12) (capitals in original).

■■■ Under Pennsylvania law, consequential damages may be limited or excluded unless the exclusion or limitation is unconscionable or causes the essential purpose of the warranty to fail. *See* 13 Pa.Cons.Stat. Ann. § 2719(c); *see also Hornberger v. General Motors Corp.*, 929 F.Supp. 884, 890–91 (E.D.Pa.1996) (Kelly, J.). The limitation found in the Subaru warranty does neither. *Cf. Hornberger*, 929 F.Supp. at 890–91 (finding limitation enforceable even though plaintiffs never expressly negotiated for it). In order for the disclaimer to be unconscionable, Subaru must have refused the Krugers a reasonable opportunity to reject it. *Id.* at 891. In addition, the disclaimer must "unreasonably favor" Subaru. *Id* . Here, the exclusion was in bold print, conspicuously stated within the 45–page warranty. (*See* Def.'s Mem. of Law in Support of Mot. for Summ. J., Ex. C at 12). Further, the plaintiffs concede in their complaint that, at the time of sale, Subaru delivered a warranty booklet outlining the various warranties associated with the car. (Compl.¶ 6); *cf. Altronics*, 957 F.2d at 1107–08 (finding limiting clause did not preclude award of consequential and incidental damages because limiting

language was included in invoices sent to plaintiffs near the time the goods were shipped and was not part of contract). Moreover, like the situation in *Hornberger*, Subaru is not unreasonably favored by the disclaimer of consequential damages.

Similarly, the warranty's essential purpose was to repair or replace any defective part free of charge. Excluding consequential damages would not cause that remedy to fail. *Cf. Hornberger*, 929 F.Supp. at 890 (finding purpose of warranty to make repairs, limiting damages merely allocates risk among parties in inherently uncertain business, and therefore exclusion did not cause warranty to fail of its essential purpose). Accordingly, the plaintiffs may not recover collateral damages pursuant to their claim under the UCC.

As noted above, recovery under the MMWA includes collateral damages. *See Suber*, 104 F.3d at 588 n. 12. However, the MMWA states that "nothing in this chapter ... shall supersede any provision of State law regarding consequential damages for injury to the person or other injury."[18] 15 U.S.C. § 2311(b)(2). Thus, as state law allows for the exclusion of collateral damages as long as such exclusion is not unconscionable or causes the warranty to fail of its essential purpose and because such exclusion existed, the plaintiffs may not recover for storage fees, insurance premiums, and rental costs pursuant to their MMWA claim.

■■■ Finally, although the UTPCPL's award of "actual damages" include reasonable consequential damages, *see, e.g., In re Bryant*, 111 B.R. 474, 479 (E.D.Pa.1990) (Waldman, J.); *see also McClelland v. Hyundai Motor Am.*, 851 F.Supp. 680, 680 (E.D.Pa.1994) (Katz, J.) (automobile buyer only entitled to recover costs that were collateral to purchase), for the same reasons articulated above with respect to the UCC and MMWA claims, the Krugers may not recover any consequential damages under

---

**18.** Furthermore, section 2304(a) of the MMWA implies that its minimum standards of protection pertain to full warranties and not to a limited warranty such as the one in this case. *See Mac-*

*Kenzie v. Chrysler Corp.*, 607 F.2d 1162, 1166 (5th Cir.1979); *Rose v. A & L Motor Sales*, 699 F.Supp. 75, 76 (W.D.Pa.1988).

the UTPCPL because of the express exclusion.[19]

An appropriate order follows.

---

**19.** I need not address Subaru's argument that the plaintiffs no longer meet the amount in controversy for diversity jurisdiction. However, I will state that the critical date in deciding that argument is the date on which the complaint was filed, not later after certain events have occurred which may show that the amount is less than the required amount in controversy. *See Suber,* 104 F.3d at 583 ("Once a good faith pleading of the amount in controversy vests the district court with diversity jurisdiction, the court retains jurisdiction even if the plaintiff cannot ultimately prove all of the counts of the complaint or does not actually recover damages in excess of $50,-000 [now $75,000].... The temporal focus of the court's evaluation of whether the plaintiff could conceivably prevail on its claim is on the time that the complaint was filed.").