**Cheryl PRICE, Appellee,**

v.

**CHEVROLET MOTOR DIVISION OF GENERAL MOTORS CORPORATION, Appellant.**

Superior Court of Pennsylvania.

Argued May 23, 2000.

Filed Dec. 29, 2000.

---

Steven B. Kantrowitz, Philadelphia, for appellant.

Paul I. Guest, Ambler, for appellee.

Before KELLY, ORIE MELVIN and TODD, JJ.

KELLY, J.:

¶ 1 In this appeal, Appellant, Chevrolet Motor Division of General Motors Corporation, asks us to determine whether the trial court erred in failing to grant its motions for post-trial relief, compulsory nonsuit, and directed verdict. We must determine whether appellant is estopped from denying the applicability of the warranty. We must also determine whether Appellant breached the warranty and whether Appellee provided sufficient evidence that the problems with the subject vehicle were not the result of abnormal use or secondary causes. Lastly, we must determine whether Appellee provided sufficient evidence of damages at trial. We hold that Appellant is estopped from denying the applicability of the warranty because of its repeated repair attempts of Appellee's vehicle despite possessing sufficient information that the vehicle had previously been totaled. However, we also hold that Appellee failed to provide sufficient evidence to negate abnormal use or secondary causes as the cause of the alleged defect. Lastly, we hold that Appellee failed to provide sufficient evidence of damages at trial.[1] Accordingly, we re-

---

1. Appellant raises additional issues, which we do not reach due to our disposition above.

verse the judgment on the verdict, which awarded $7000 in damages to Appellee.

¶ 2 The relevant facts and procedural history of this case are ably set forth by the trial court as follows:

This appeal arises from a breach of warranty action brought by [Appellee] Cheryl Price, against [Appellant] Chevrolet Motor Division of General Motors Corporation.

This case was heard at a jury trial which concluded on February 11, 1999. A verdict was entered in favor of the [Appellee]. The jury awarded [Appellee] $7000 after finding that a valid warranty existed, [Appellant] breached that warranty and [Appellee] suffered damages as a result of that breach.

[Appellant] subsequently filed Post Trial Motions requesting that the Court order Judgment Notwithstanding the Verdict [JNOV] or, in the alternative, a New Trial. On October 5, 1999 this Court denied [Appellant]'s Post–Trial Motions. On April 18, 1996, [Appellee] purchased a used 1994 Geo Prizm from County Line Auto in Philadelphia, Pennsylvania. This vehicle was manufactured and warranted by [Appellant] General Motors Corporation. [Appellant] issued a three year, 36,000 mile "Bumper to Bumper" warranty when the vehicle was first put into service on September 6, 1994. The warranty applies to the original owner, as well as any subsequent owners, of the vehicle during the warranty period. When [Appellee] purchased the vehicle there were approximately 20,000 miles registered on the odometer. Therefore, at the time [Appellee] purchased the car, there were 18 months and 16,000 miles remaining on the original General Motors warranty.

The engine failed within the first three months [Appellee] owned the vehicle. In accordance with the terms of the warranty, the vehicle was towed to Northeast Auto Outlet, an authorized Chevrolet dealer. Initially the vehicle was at Northeast Auto Outlet for warranty repairs during the last two weeks of July, 1996. The "check engine" light stayed on and the vehicle was returned for additional warranty repairs on August 1, 1996; August 19, 1996; August 30, 1996 and September 13, 1996. On each occasion Northeast Auto Outlet acknowledged the need to have the vehicle repaired and attempted to do so. However, the attempts to repair the vehicle were unsuccessful.

On October 1996, [sic] [Appellee]'s attorney contacted General Motors. In a letter dated 10/19/96, General Motors assured [Appellee] that Chevrolet Motor Division would "repair all defects validated to exist in accordance with the terms of the existing warranty coverage." Trial Exhibit P 14. [Appellee] returned the vehicle for the same repairs on December 2, 1996. This attempt to repair the vehicle was also unsuccessful.

On July 16, 1997 [Appellee] filed a Complaint, alleging causes of action based on **The Magnuson–Moss Federal Trade Commission Warranty Improvement Act,** 15 U.S.C. § 2301 *et seq.,* the **Uniform Commercial Code,** 13 P.S. § 1101 *et seq.,* and the **Unfair Trade Practices and Consumer Protection Act,** 73 P.S. § 201–1 *et seq.*

On February 19, 1998, [Appellant]'s employee John Webster inspected the vehicle for the purpose of defending this case. This inspection revealed that [Appellant], on February 29, 1996, replaced the vehicle's entire engine under its warranty prior to the date [Appellee] purchased the vehicle. The General Motors warranty states that "[a]ll exchange components used meet GM standards and are warranted the same as new components." Trial Exhibit P 2.

In his affidavit, Mr. Webster represented that the vehicle had in fact been involved in an accident on September 24, 1995, in New York State, and was declared a total loss as a result of that accident. Mr. Webster further repre-

sented that [Appellant] had no knowledge of the September 24, 1995 accident prior to February 19, 1998. In relevant part, the General Motors warranty provides that "[t]his warranty is void on vehicles currently or previously titled as salvaged, scrapped, junked or totaled." (N.T. 2/9/99, testimony of Cheryl Price, at 26). Based on this discovery, [Appellant] argued at trial that the warranty had been void since the September 24, 1995 accident because the vehicle had in fact been titled as salvaged.

At trial, John R. Hendrickson, Dealer Relations Manager of National Auto Dealers Exchange testified that the vehicle in question was brought to their auction by North Broad Auto Sales and sold to Harley Auto Sales on January 31, 1996. (N.T. 2/10/99, testimony of John R. Hendrickson, at 5). This vehicle was brought to auction and sold "under the green light." This means that the vehicle is sound, according to National Auto Dealer's Exchange. (N.T. 2/10/99, testimony of John R. Hendrickson, at 6). If a vehicle has salvage history it should be sold "under the red light." (N.T. 2/10/99, testimony of John R. Hendrickson, at 6). National Auto Dealers Exchange verifies the vehicle history of vehicles brought to their auction through CARFAX. However, this vehicle was salvaged in New York State, which does not release these records. Therefore, CARFAX did not have any record that the vehicle had been salvaged and National Auto Dealers Exchange, therefore, did not find out either until this lawsuit was filed.

(Trial Court Opinion, dated January 10, 2000, at 1–4).

¶ 3 On appeal, Appellant raises the following issues for our review:

WHETHER THE [TRIAL COURT] COMMITTED PREJUDICIAL AND REVERSIBLE ERROR IN FAILING TO GRANT [APPELLANT'S], MOTIONS FOR POST TRIAL RELIEF, COMPULSORY NONSUIT, AND DIRECTED VERDICT, WHERE THERE WAS NO EVIDENCE OF A *PRIMA FACIE* CLAIM.

WHETHER THE [TRIAL COURT] COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY FAILING TO INSTRUCT THE JURY ON THE MATTERS PROPERLY REQUESTED BY [APPELLANT], IN ITS POINTS FOR CHARGE.

WHETHER THE COURT, DURING THE TRIAL BELOW, COMMITTED PREJUDICIAL AND REVERSIBLE ERROR IN PROHIBITING [APPELLANT'S] COUNSEL FROM ARGUING TO THE JURY AND ELICITING PROPER TESTIMONY REGARDING RELEVANT MATTERS.

WHETHER THE [TRIAL COURT] COMMITTED PREJUDICIAL AND REVERSIBLE ERROR IN PERMITTING THE JURY TO CONSIDER THE TESTIMONY OF [APPELLEE'S] EXPERT WHICH WAS BASED UPON SPECULATION.

(Appellant's Brief at 5).

¶ 4 In Appellant's first argument, it alleges that the trial court erred in failing to grant Appellant's Motion for JNOV or, in the alternative, a new trial. Specifically, Appellant avers that the verdict was based on insufficient evidence, against the weight of the credible evidence and contrary to law. Appellant contends that Appellee's vehicle was not covered under the terms of Appellant's express warranty or any other warranty. Further, Appellant contends that Appellee failed to provide any evidence at trial as to damages. Accordingly, Appellant asserts that the trial court abused its discretion and committed reversible error by not granting Appellant's motion for post trial relief. We agree.

■ ¶ 5 When reviewing the propriety of an order denying judgment notwithstanding the verdict, this Court must determine whether there is sufficient competent evidence to sustain the verdict.

*Birth Center v. St. Paul Companies, Inc.,* 727 A.2d 1144 (Pa.Super.1999).

We must review the evidence in the light most favorable to the verdict winner and give the verdict winner the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences.

*Id.* at 1154.

A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict.... Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact.... A JNOV should be entered only in a clear case.

Our review of the trial court's denial of a new trial is limited to determining whether the trial court acted capriciously, abused its discretion, or committed an error of law that controlled the outcome of the case. In making this determination, we must consider whether, viewing the evidence in the light most favorable to the verdict winner, a new trial would produce a different verdict. Consequently, if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed.

*Buckley v. Exodus Transit & Storage Corp.,* 744 A.2d 298, 304–305 (Pa.Super.1999) (internal citations omitted).

The scope of review in deciding whether or not a trial court erred in not granting a new trial is broader than when we pass on whether or not a denial of judgment n.o.v. was an abuse of discretion. Here we must consider all of the evidence. Only when the verdict is so contrary to the evidence so as to shock one's sense of justice should a new trial be granted, however. We will not reverse the decision of the trial court in refusing to grant a new trial unless there has been a clear abuse of discretion or an error in law determinative to the outcome of the case.

*Barrack v. Kolea,* 438 Pa.Super. 11, 651 A.2d 149, 152 (1994) (internal citations omitted). Keeping these principles in mind, we consider the propriety of the trial court's decision to deny Appellant any post-trial relief.

■■■■■■ ¶ 6 In her answer brief, Appellee alleges that Appellant is estopped from challenging the applicability of the express warranty under the doctrine of equitable estoppel.[2]

Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment may be enforced in equity.

*Kreutzer v. Monterey County Herald Co.,* 560 Pa. 600, 606, 747 A.2d 358, 361 (2000) (quoting *Novelty Knitting Mills v. Siskind,* 500 Pa. 432, 435, 457 A.2d 502, 503 (1983)).

[Equitable estoppel] arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe

---

**2.** While equitable estoppel was not Appellee's theory at trial, it was raised in Appellee's response to Appellant's motion for Summary Judgment, in Appellee's brief in support thereof, and Appellee requested that the trial court enter a jury instruction on estoppel, which the trial court denied.

certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. When estoppel is established, the person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, aver a different or contrary state of facts as existing at the same time, or deny or repudiate his facts, conduct, or statements.

There are two essential elements to estoppel: inducement and reliance. The inducement may be words or conduct and the acts that are induced may be by commission or forbearance provided that a change in condition results, causing disadvantage to the one induced. More important, the law requires that

> There can be no equitable estoppel where the complainant's act appears to be rather the result of his own will or judgment than the product of what the defendant did or represented. The act must be induced by, and be the immediate or proximate result of, the conduct or representation, which must be such as the party claiming the estoppel had a right to rely on. The representation or conduct must of itself have been sufficient to warrant the action of the party claiming the estoppel. If notwithstanding such representation or conduct he was still obliged to inquire for the existence of other facts and to rely on them to sustain the course of action adopted, he cannot claim that the conduct of the other party was the cause of his action and no estoppel will arise. Where there is no concealment, misrepresentation, or other inequitable conduct by the other party, a party may not properly claim that an estoppel arises in his favor from his own omission or mistake. Estoppel cannot be predicated on errors of judgment by person asking the benefit.

[*In Re Estate of Tallarico*, 425 Pa. 280, 288–289, 228 A.2d 736, 741 (1967).].

*Zitelli v. Dermatology Educ. & Research Found.*, 534 Pa. 360, 369–370, 633 A.2d 134, 139–140 (1993) (some internal citations and quotations omitted).

■ ¶ 7 In the instant case, Appellant made at least five repair attempts under warranty prior to Appellee bringing her complaint. At no point prior to Appellee bringing this action did Appellant challenge the validity of Appellee's warranty. In Appellant's motion for summary judgment, it averred for the first time that Appellee's vehicle had been totaled in a previous accident, issued a salvage title and, therefore, was not covered by any express or implied warranty from the manufacturer. Appellant's illumination of Appellee's vehicle history does not conclude the matter.

¶ 8 We recognize that Appellant's continued repair attempts fostered a reasonable belief that Appellee's vehicle was covered under the manufacturer's express warranty. However, Appellant cannot be equitably estopped from denying the existence of the warranty unless Appellant also "**intentionally** or through **culpable negligence** induce[d] [Appellee] to believe certain facts to exist. . . ." *See Tallarico, supra* at 288, 228 A.2d at 741.

¶ 9 Appellant's expert, John Webster, testified at trial that Appellant paid on a warranty claim for a new engine in February 1996, after the accident and prior to the vehicle's sale to Appellee. The technician noted in the accompanying repair order that the engine had a "knock," broken brackets and a broken engine block and that in his opinion the vehicle had been in a major accident. (N.T., Trial, 2/10/99, at 24). Nevertheless, Appellant paid the claim. Mr. Webster also testified that his initial review of the vehicle's history revealed that the vehicle had had no warranty claims for the first 20,568 miles prior to requiring repeated engine repairs. Furthermore, Mr. Webster testified that it was apparent from his physical examina-

tion of the vehicle that it had been involved in a serious accident. From our review of the record, it is evident that prior to Appellee taking possession of the vehicle, Appellant was on notice that the vehicle may have been involved in a serious accident, which would void the warranty, but chose not to pursue further investigation. Rather, Appellant continued making warranty repairs on Appellee's automobile, and only began its investigation after Appellee filed suit. Appellant bears the responsibility for failing to investigate the vehicle's warranty before making numerous representations to Appellee that the vehicle was covered under warranty. Under the facts of this case, it is clear that at all times prior to the institution of Appellee's suit, Appellant had ample evidence in its possession to void the warranty. In addition, it was foreseeable that Appellant's repeated warranty repairs would foster a reasonable reliance by Appellee that the vehicle was covered under Appellant's warranty. Appellee should not be penalized for Appellant's apparent negligence in failing to investigate a series of unusual or suspicious warranty claims pertaining to the subject vehicle. Hence, the principle of equitable estoppel is applicable to the present case.

¶ 10 The record reflects that the concept of estoppel was not presented to the jury for its consideration. In fact, the trial court refused to instruct the jury on estoppel. Instead, the jury was asked on the verdict sheet whether Appellee "proved by a preponderance of the evidence that the subject vehicle was covered by a valid, effective warranty during the time period of her ownership?" The jury responded in the affirmative. However, Appellant's express warranty clearly and unequivocally stated that the warranty was void if the vehicle had been salvaged. There is no dispute that the vehicle was totaled and salvaged during the warranty period and prior to Appellee's ownership of the vehicle. Hence, the warranty would appear to be void under its express terms. We can-

not speculate as to the trial court's basis for denying Appellant's motion for directed verdict and allowing a jury issue on the warranty, without consideration of equitable estoppel. Nevertheless, the trial court's decision is supported by the application of the equitable estoppel doctrine, which bars Appellant from denying the validity of the warranty under the circumstances of this case. Thus, we conclude that Appellee proved the existence of a valid warranty.

¶ 11 We must now address whether Appellee provided sufficient evidence that Appellant breached its warranty. To prevail on a claim for breach of warranty under the Pennsylvania Uniform Commercial Code, a plaintiff must establish that a breach of warranty occurred and that the breach was the proximate cause of the specific damages sustained. *Altronics of Bethlehem, Inc. v. Repco, Inc.,* 957 F.2d 1102 (3rd Cir.1992); *Kruger v. Subaru of America, Inc.,* 996 F.Supp. 451 (E.D.Pa.1998). If a party chooses to prove the defect by circumstantial evidence, it must negate abnormal use and reasonable secondary causes. *Id.*

¶ 12 In the instant case, Appellant issued a three year, 36,000 mile "Bumper to Bumper" warranty, at the time the vehicle was first put into service on September 6, 1994. (Appellee's Exhibit 10; GM New Vehicle Warranty, at 6–7). The terms of the express warranty provided coverage to the original and subsequent owners during the warranty period. (*Id.*). Under the express terms of the warranty, Appellant agreed to perform effective warranty repairs on the vehicle. Appellee purchased the vehicle with approximately 18 months and 16,000 miles remaining on the warranty. The record reflects that shortly after Appellee acquired the vehicle the engine failed, requiring repair at Appellant's authorized repair facility. Subsequently, the vehicle was returned to the facility on at least five separate occasions to correct a

malfunctioning "check engine" light.[3] Each time the vehicle was brought to the repair facility, Appellant addressed the problem under the warranty. All of Appellant's attempts were unsuccessful and the problem continues to exist. Therefore, Appellant has failed to comply with the terms of its own warranty by failing to effectively repair Appellee's vehicle. Appellant's failure constitutes a breach of its express warranty.

¶ 13 We turn now to the second component of our analysis; whether Appellee properly negated abnormal use or the existence of secondary causes for the defect. *See Kruger, supra.*

■ ¶ 14 Instantly, Appellant introduced evidence that the vehicle had an unblemished repair history up to approximately 20,000 miles. Appellant introduced evidence that the car was involved in a serious accident at that mileage point, resulting in the vehicle being totaled. Appellant introduced further evidence demonstrating that the vehicle was then rebuilt. The repairs were extensive and included a new engine and various mechanical and electrical components. The vehicle was then sold at auction and eventually made its way into Appellee's possession. Appellant's expert opined with a reasonable degree of professional certainty that the accident and subsequent repairs caused the continuing problems with the vehicle and not a manufacturing defect. (N.T. Trial, 2/10/99, at 43–44).

¶ 15 By contrast, Appellee provided absolutely no evidence that would tend to prove that the defect was not caused by the accident, or to negate Appellant's argument in anyway.[4] Rather, Appellee's case rested on the presumption that the continuing malfunctions were caused by a manufacturer's defect and that the serious-ness of the defect warranted relief. Appellee failed to meet her burden of negating that abnormal use or a secondary cause, such as the accident, caused the defect. Accordingly, the trial court erred in failing to grant Appellant's motion for JNOV.

■ ¶ 16 Additionally, Appellee failed to provide sufficient evidence of damages at trial. At the outset we note that it cannot be determined from the verdict whether the jury relied on the Pennsylvania Uniform Commercial Code or the Magnuson Moss Act in rendering its verdict.

> The Magnuson–Moss Warranty Act is virtually silent as to the amount and type of damages which may be awarded for breach of an express limited warranty. However, the statute provides that nothing in the Act "shall invalidate or restrict any right or remedy of any consumer under State law ... " 15 U.S.C. § 2311(b)(1). Furthermore, the legislative history clearly implies that a resort to state law is proper in determining the applicable damages under the Act.

*MacKenzie v. Chrysler Corporation,* 607 F.2d 1162, 1166 (5th Cir.1979).

> Indeed, many cases make clear that damages for economic loss—usually measured under the relevant state's Uniform Commercial Code as the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted—are recoverable under the [Magnuson–Moss Warranty Act]. Given that damages for economic loss may be assumed to be recoverable under the [Magnuson–Moss Warranty Act], we held in *MacKenzie* that a resort to state law was proper to determine the applicable measure of damages.

---

3. The "check engine" light is designed to inform the driver of a malfunction in the operation of the engine and/or related electronics or systems.

4. Appellant's own expert, Scot Andrew Turner, testified that he did not know what was wrong with the car. (N.T. Trial, 2/9/99 at 15).

*Boelens v. Redman Homes, Inc.,* 748 F.2d 1058, 1065 (5th Cir.1984) (internal citations omitted). *See also Murphy v. Mallard Coach Company,* 179 A.D.2d 187, 582 N.Y.S.2d 528 (1992) (holding that damages recoverable under Magnuson Moss Act for breach of warranty are determined pursuant to state law); *Walsh v. Ford Motor Company,* 807 F.2d 1000 (D.C.Cir.1986) (holding that state warranty law lies at base of all warranty claims under Magnuson Moss Act).[5] Therefore, we refer to the Pennsylvania Uniform Commercial Code to determine the appropriate measure of damages.

▓▓▓▓▓▓ ¶ 17 Generally, in a breach of warranty action under Section 2714 of the Pennsylvania Uniform Commercial Code, the measure of damages is the **actual** difference in value between the goods as promised and the goods as received. *AM/PM Franchise v. Atlantic Richfield,* 526 Pa. 110, 584 A.2d 915 (1990); *see also Pompa v. Hart* 15 Pa. D. & C.4th 119 (1992) (finding in part that failure to repair transmission of tractor in accordance with express warranty entitled owner to difference in value between unrepaired tractor and its value with promise of repair); *Kruger, supra* (finding that plaintiff failed to meet burden of proof under Pennsylvania Uniform Commercial Code because plaintiff failed to show difference between vehicle as warranted and vehicle as actually delivered). Thus, in determining dam-

ages under the UCC, the value the goods would have if they had been as warranted is crucial. *K & C, Inc. v. Westinghouse Elec. Corp.,* 437 Pa. 303, 263 A.2d 390 (1970). *See also Kruger, supra* (finding that, although purchase price is evidence of value of vehicle as warranted, plaintiffs must show actual value of vehicle when it was delivered in its allegedly defective condition). By contrast, the purchase price is irrelevant, although it does serve as *prima facie* evidence of the value of the goods. *Id.*[6] However,

> the difference in value of the goods, whether or not measured by cost of repair, is not the sole or exclusive measure of damages for breach of warranty under the Code. The Code permits an award of proximate damages of a different amount if special circumstances exist and further allows in certain cases, recovery of losses resulting from the particular needs of the buyer.

*Cober v. Corle,* 416 Pa.Super. 191, 610 A.2d 1036, 1041 (1992).

¶ 18 In the instant case, Appellee provided absolutely no evidence as to the vehicle's present value, or to its actual value when it was delivered to her in the alleged defective condition. Appellee offered no expert testimony to help establish her damages.[7] Rather, the sole evidence Appellee introduced as to damages was Appellee's sales agreement.[8]

---

**5.** We recognize that the above-cited opinions are not binding upon this Court. Nonetheless, we are amply persuaded by the reasoning therein and employ the cited language in analyzing damages in the present case.

**6.** We recognize that 13 Pa.C.S.A. § 2714 has since been amended. Nonetheless, that portion of the statute discussed in the relevant part of *K & C, Inc., supra,* was not altered and therefore, *K & C, Inc.* is still good law.

**7.** During the charging conference, Appellee alleged that because she was seeking recovery of the full purchase price pursuant to Section 2310(d)(1) of the Magnuson Moss Act, she did not have to provide evidence of her damages. Appellee's contention is devoid of merit. Here, Appellee had driven the vehicle almost

30,000 miles at the time of this suit, thereby depreciating the vehicle's value. Therefore, Appellee was not entitled to full recovery and should have at least brought forth some evidence as to the vehicle's present value. *See Kruger, supra* (finding plaintiff not entitled to full refund under 15 U.S.C. § 2310(d) where plaintiff used car for eight months, thereby depreciating its value).

**8.** The absence of any evidence as to damages did not go unnoticed by the trial court, which commented as follows:

> I mean honestly, Counsel, I was trying to get a handle on how to charge this jury on damages, and basically I think the only solution is just to give them the standard—I'll take out the word 'standard.' But, I mean, I'm almost at the point in this case

■ ¶ 19 Moreover, Appellee's reliance on Section 2719(c) is misplaced. We disagree with Appellee's assertion that, pursuant to Section 2719(c), Appellee was entitled to any commercially reasonable charges, expenses or commissions in connection with effective cover as well as incidental and delay damages, as provided in Section 2715(a). Section 2719(c) allows that "[w]here circumstances cause an exclusive or limited remedy to fail its essential purpose, remedy may be had as provided in this title." 13 Pa.C.S.A. § 2719(c). Appellee incorrectly applies Section 2719. The warranty's essential purpose is to repair or replace any defective part free of charge. The warranty expressly excludes incidental damages, such as those set forth in Section 2715(a). Excluding incidental damages would not cause the remedy available under the warranty to fail. Accordingly, Appellee may not recover collateral damages pursuant to her claim under the Pennsylvania Commercial Code. *See Kruger, supra* (finding that express warranty's specific exclusion of consequential damages would not cause essential purpose of warranty, to repair or replace defective parts free of charge, to fail and therefore plaintiffs not entitled to recovery of collateral damages under UCC).[9]

¶ 20 The sheer lack of evidence provided by Appellee as to the vehicle's current worth or its fair market value when purchased, required the jury to speculate as to Appellee's actual loss. Accordingly, the trial court erred in denying Appellant's motion for JNOV on these grounds because there was insufficient competent evidence of damages. *See Buckley, supra.*

¶ 21 Based upon the foregoing, we hold that Appellant is estopped from denying the applicability of the warranty. Nonetheless, the trial court erred in not granting JNOV in favor of Appellant because Appellee failed at trial to provide sufficient evidence that the problems with her vehicle did not result from abnormal use or secondary causes. Furthermore, Appellee failed to provide sufficient evidence of her damages at trial. Accordingly, we reverse the judgment on the verdict, which awarded $7000 in damages to Appellee.[10]

¶ 22 Judgment reversed.

where, you know, the jury is just picking a number, and that's not what we're supposed to be doing here.
(N.T. Trial, 2/11/99, at 16–17).

9. Assuming Section 2719(c) applies in the instant case, Appellee must still establish her incidental damages to prevail under Section 2715(a)(2). *See Kruger, supra* (finding that claim for damages under Section 2715 must be supported by evidence). Here, Appellant failed to produce evidence that she incurred any incidental damages in attempting to sell

the vehicle, or other expenses incurred as contemplated by the statute. For example, while Appellee insists that her vehicle was untrustworthy and caused her to rely on rental cars for longer trips, Appellee introduced no bills or other evidence of these rentals. Thus, Appellee was not entitled to incidental damages and the jury verdict cannot be construed as an award of incidental damages.

10. Due to our disposition of Appellant's first issue we need not address Appellant's remaining issues.